**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 25-235-DLB-CJS**

**JEFFREY G. CHAPPIE**                                                                **PLAINTIFF**


**v.**                                   **MEMORANDUM OPINION AND ORDER**


**ELITE PHYSICAL MEDICINE & REHABILITATION, LLC**                **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

This matter is before the Court on Defendant Elite Physical Medicine & Rehabilitation, LLC's ("Elite") Motion to Dismiss (Doc. # 4).  Plaintiff having filed his Response (Doc. # 6), and Elite having filed its Reply (Doc. # 7), the matter is ripe for the Court's review.  For the following reasons, Elite's Motion (Doc. # 4) is **denied**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Several years ago, Jeffrey Chappie, a resident of Kenton County, Kentucky, was suffering from pain in his hand.  (Doc. # 1-1 ¶ 6).  Sometime around October of 2024, Chappie saw a Facebook advertisement touting Elite's neuropathy treatment for pain relief.  (*Id.*).  Eager to alleviate his pain and intrigued by Elite's "targeted Internet advertisements to his Facebook page," Chappie decided to book a series of appointments with Elite.  (*Id.*).  Chappie paid around $7,700 for this course of treatment.  (*Id.* ¶ 7).  On or around October 17, 2024, at Chappie's first appointment, Elite informed him that his treatment would involve weekly Platelet Rich Plasma injections into his hands for six weeks.  (*Id.* ¶ 9).  Chappie received these weekly injections, and his final appointment occurred on or about November 21, 2024.  (*Id.* ¶ 10).  Shortly thereafter—sometime

1

between November 21, 2024 and December 11, 2024—Chappie returned to Elite for "additional medical treatment and care." (*Id.* ¶ 11). Although Chappie does not detail the extent of this treatment, it involved an additional injection into his left hand. (*Id.* ¶ 12). Chappie contends that the nurse practitioner administering the injection struggled to insert the needle. (*Id.* ¶ 13). Rather than stopping to reevaluate, Chappie alleges that the nurse practitioner "forced the needle deeper into Mr. Chappie's hand." (*Id.*). As a result of these actions, Chappie "experienced extreme and immediate pain followed by numbness" and his "left hand was rendered functionally disabled . . . for several weeks following the procedure." (*Id.* ¶ 14). Chappie's treatment took place at Elite's offices in Indiana.[1] (Doc. # 6 at 4). Elite is an Indiana limited liability company with its principal place of business in Dearborn County, Indiana. (Doc. # 1-1 ¶ 2).

On or about January 14, 2025, Chappie was evaluated by medical professionals at The Christ Hospital's emergency department. (*Id.* ¶ 18). They characterized Chappie's condition as "most consistent with median nerve compression." (*Id.*). Subsequently, on January 30, 2025 Dr. Noah Shaftel evaluated Chappie and documented his "left hand numbness and tingling" as well as "finger stiffness." (*Id.* ¶ 19). Then, in March of 2025, Dr. Rachel Heberling conducted a further evaluation and performed electrodiagnostic testing on Chappie. (*Id.* ¶ 20). This testing returned findings "consistent with severe nerve damage." (*Id.*). Chappie underwent carpal tunnel surgery on or about April 18,

---

[1] In his Complaint (Doc. # 1-1), Chappie does not provide the location of the treatment he received at Elite. Although he alleges generally that Elite "targeted advertisements of their medical treatment services in Indiana and directly solicited business from Kentucky residents, like Mr. Chappie," Chappie does not identify the specific location at which he received the allegedly negligent medical care. (Doc. # 1-1 ¶ 4). However, in his Response to Elite's Motion to Dismiss, Chappie claims that he "is just one of the many Kentuckians who predictably seek this treatment across the Ohio River to [sic] Elite's Lawrenceburg, Indiana location[.]" (Doc. # 6 at 4).

2025.  (*Id.* ¶ 22).  This surgery revealed a "thickened transverse carpal ligament consistent with trauma induced inflammation[.]"  (*Id.* ¶ 23).

Chappie filed his Complaint in Kenton County Circuit Court on November 24, 2025. (Doc. # 1-1).  Elite removed the case to this Court on December 30, 2025.  (Doc. # 1). On January 14, 2026, Elite filed the instant Motion to Dismiss.  (Doc. # 4).  In its Motion, Elite claims that dismissal is warranted because the Court lacks personal jurisdiction over the Defendant under Federal Rule of Civil Procedure 12(b)(2).  (Doc. # 4-1 at 3). Alternatively, Elite moves to dismiss Chappie's Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (*Id.* at 10).  Chappie filed his Response (Doc. # 6) on February 4, 2026, Elite filed a Reply (Doc. # 7) on February 17, 2026, and this matter is ripe for the Court's review.

## II.    STANDARD OF REVIEW

When a defendant moves to dismiss a complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  However, "[m]otions to dismiss under Rule 12(b)(2) involve burden shifting."  *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). When faced with a Rule 12(b)(2) motion, a court can proceed in one of three ways.  *Id.* at 505.  A court may decide the motion based on the parties' written submissions, it may permit discovery in aid of the motion, or it can hold an evidentiary hearing on the merits of the motion.  *Id.*  If the court decides the motion based on written submissions alone, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists "by 'establishing with reasonable particularity sufficient contacts between [the defendant] and

3

the forum state to support jurisdiction.'"  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).  In such a case, the plaintiff's burden is "relatively slight."  *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008); *see also id.* at 887.

In determining whether a plaintiff has met his burden, the court views the pleadings and affidavits in the light most favorable to the plaintiff and "does not weigh the controverting assertions of the party seeking dismissal."  *Theunissen*, 935 F.2d at 1459. Accordingly, where a court decides a Rule 12(b)(2) motion on the papers alone, dismissal is appropriate only where all the specific facts which the plaintiff alleges collectively fail to state a *prima facie* case for jurisdiction.  *Id.*  And, in that context, "any contested facts are resolved in the plaintiff's favor."  *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *3 n. 2 (6th Cir. May 8, 2024) (citing *Neogen*, 282 F.3d at 887)).  In such circumstances, a court may only consider "the defendant's undisputed factual assertions." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).   Here, neither party has requested additional discovery, and the Court has not held an evidentiary hearing.  Thus, the Court will resolve the motion on the written submissions.  Consequently, Chappie need only make a *prima facie* showing of jurisdiction to survive dismissal.  *Id.* at 505.

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

4

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). This "does not require detailed factual allegations, but it demands more than an unadorned, the -defendant-unlawfully-harmed-me accusation." *Id.* (quotations omitted). Thus, the plaintiff must put forward enough facts that the Court could reasonably infer "that the defendant is liable for the misconduct alleged." *Id.* In considering a Rule 12(b)(6) motion, a district court "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Hooker v. Anderson*, 12 F. App'x 323, 325 (6th Cir. 2001) (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

### III.   ANALYSIS

####   A.   Personal Jurisdiction

#####      1.   *Kentucky's Long-arm Statute*

When analyzing personal jurisdiction, a federal district court sitting in diversity "must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements."[2] *Air Prods. & Controls, Inc. v. Safetech, Int'l Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Therefore, the Court must determine whether Kentucky law sanctions the exercise of personal jurisdiction over Elite. *See Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) ("When sitting in diversity, a federal court may exercise personal jurisdiction

---

[2]       This Court sits in diversity. Chappie is a citizen of Kentucky (Doc. # 1-1 ¶ 1), and Elite is a limited liability company organized under the laws of the state of Indiana with its principal place of business in Dearborn County, Indiana. (*Id.* ¶ 2). The Parties have stipulated that the amount in controversy exceeds $75,000. (Doc. # 1-2 at 1).

over an out-of-state defendant only if a court of the forum state could do so.") (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997)).  This requires an examination of Kentucky's long-arm statute.  *Id.*

Previously, Kentucky's long-arm statute "'enumerated' limited bases for personal jurisdiction over out-of-state defendants."  *Neville v. The Salvation Army Nat'l Corp.*, No. 3:25-cv-227-RGJ, 2026 WL 687952, at *18 (W.D. Ky. Mar. 11, 2026) (citing *Blessing*, 988 F.3d at 901; *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011)).  Chappie and Elite both proceed from the premise that KRS 454.210 prescribes a discrete list of activities that permit the exercise of personal jurisdiction over an out-of-state defendant.  (*See* Doc. # 4-1 at 7; Doc. # 6 at 4).  Elite contends that a "non-resident defendant 'whose activities fall outside the criteria' of [KRS 454.210], 'may not be subjected to long-arm jurisdiction.'"  (*Id.* (quoting *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 5, 56 (Ky. 2011))).  Concurring in this assessment, Chappie argues that Elite's conduct falls under KRS 454.210(d), which permits this Court's exercise of personal jurisdiction over Elite.  (Doc. # 6 at 4).

Until recently, the Parties' understanding of Kentucky's longarm statute was correct.  However, as of July 15, 2024, Kentucky courts "may exercise personal jurisdiction over . . . a party . . . *on any basis* consistent with the Constitution of Kentucky and the Constitution of the United States."  KRS 454.210(2) (emphasis added).  So, where the amended long-arm statute applies, Kentucky courts "need consider only whether an assertion of personal jurisdiction would comport with due process and other constitutional requirements."  *Braun v. Bearman Industries, LLC*, No. 2024-SC-0277-DG, 2025 WL 2998495, at *3 n. 4 (Ky. Oct. 23, 2025).  "In other words, the scope of the amended Long-

6

Arm Statute is co-extensive with the Constitutional due process analysis." *Woods v. Morris Mohawk Gaming Group*, No. 3:23-cv-53-GFVT, 2025 WL 3459479, at *2 (E.D. Ky. Dec. 2, 2025) (citing *Premier Packaging, LLC v. Sticky Fingers Sweets & Eats, Inc.*, No. 3:24-cv-427-RGJ, 2025 WL 359324, at *3 (W.D. Ky. Jan. 31, 2025)); *see also Aristech Chem. Int'l Ltd. V. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) ("[W]hen a state's long-arm statute reaches as far as the limits of the Due Process Clause, . . . the court need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process.") (internal quotations omitted).   The events giving rise to this matter took place between October of 2024 and April of 2025—months after these revisions took effect.  (Doc. # 1-1 ¶¶ 6, 22).  Accordingly, the Court will apply Kentucky's longarm statute as amended.  This means that the Court need only determine whether exercising personal jurisdiction over Elite would comport with constitutional due process requirements.  *Neville*, 2026 WL 687952, at *18.

### 2.    Due Process Requirements

It is well-settled that "[d]ue process requires that an out-of-state defendant have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair play and substantial justice.'"  *Blessing*, 988 F.3d at 904 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted)).  And these minimum contacts must involve contact with the forum state itself, "not the defendant's contacts with persons who reside there."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Personal jurisdiction comes in two varieties: specific and general.  *Air Prods.*, 503 F.3d at 549-50 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)).  Here,

7

Chappie argues that Elite is subject to both general and specific jurisdiction.  (Doc. # 6 at 2-3).  The Court will address each in turn.

### a.    General Jurisdiction

General jurisdiction exists only where that defendant's contacts with the forum state are so "continuous and systematic" that it is "essentially at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 (2014).  General jurisdiction extends over "any and all claims" against the defendant, regardless of whether the claims arise from the defendant's conduct in the forum state.  *Id.* at 137.  The Supreme Court has held that general jurisdiction exists over a corporation that was incorporated in the forum state or has its principal place of business there.  *Butler v. Adient US, LLC*, No. 3:20-cv-2365, 2021 WL 2856592, at *1 (N.D. Ohio Jul. 8, 2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011)).  And, in *Daimler*, "the Supreme Court followed suit from *Goodyear* and looked to place of incorporation and principal place of business to determine whether or not a court had general jurisdiction over both a corporation and a limited liability company."  *Id.* (footnote omitted).

Thus, federal courts consider LLCs to be "at home" for purposes of general jurisdiction in their state of organization and the state where they maintain their principal place of business.  *See, e.g., Id.* (quoting *Talbot's Pharms. Fam. Prod. L.L.C. v. Skanda Grp. Indus. LLC*, No. 3:20-cv-716, 2021 WL 1940203, at *3 (W.D. La. Apr. 28, 2021) (collecting cases)); *Trustees of Bricklayers and Masons Local No. 22 Pension Plan v. 5 Star Masonry LLC*, No. 3:20-cv-398, 2021 WL 215649, at *2 n. 1 (S.D. Ohio Jan. 21, 2021) ("Here, Defendant is 'at home' in Indiana because it is an Indiana LLC with its principal place of business in Indiana.").  Chappie acknowledges that "Elite is a limited

8

liability company organized under the laws of the State of Indiana and registered with the Indiana Secretary of State Office" and that Elite "has its principal place of business in Dearborn County, Indiana." (Doc. # 1-1 ¶ 2). Thus, it would appear that this Court lacks general personal jurisdiction over Elite.

But the Supreme Court, in *Daimler*, did not "foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." 571 U.S. at 139 n. 19. Chappie argues that Elite's continuous and systematic contacts with Kentucky "through the use of the Internet and social media" are such a case. (Doc. # 6 at 2). Specifically, Chappie alleges that Elite "targeted advertisements of their medical treatment services in Indiana and directly solicited business from Kentucky residents . . ." via its website as well as its Facebook and LinkedIn pages. (Doc. # 1-1 ¶ 4). He points to language on Elite's website advertising Elite's services to Cincinnati, Ohio and the "surrounding communities," which include swaths of northern Kentucky. (Doc. # 6 at 2). Chappie also observes that, on Elite's Facebook page—which is accessible from Elite's website—Elite states that it operates in several northern Kentucky cities, including Florence, Hebron, Covington, and Newport. (*Id.* Ex. A). Likewise, on Elite's LinkedIn profile, which can also be accessed from its website, Elite advertises that it is "located in Ohio, Indiana, [and] Kentucky." (*Id.* Ex. B). However, Elite's website lists only three physical locations—one in Ohio and two in Indiana. (*Id.* at 2).

Reviewing Chappie's allegations in the light most favorable to him, the Court concludes that he has failed to make a *prima facie* showing that general personal

9

jurisdiction exists in this case.  Chappie argues that Elite's "advertising, social media usage, and blatant appeal to Kentuckians in need of medical care" suffice to confer general jurisdiction.  (Doc. # 6 at 3).  However, merely maintaining a public-facing website and engaging in social media advertising do not constitute such substantial entanglement with Kentucky that Elite can be considered "at home" here.  *See Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) ("[T]he fact that Dotster maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction.") (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997)); *Dennis v. Zuckerberg*, No. 4:17-cv-670, 2017 WL 3873761, at *2 (N.D. Ohio Sep. 5, 2017) (finding general jurisdiction did not exist where the defendant merely maintained a public website that was accessible in the forum state).  Even accepting Chappie's allegation that Elite targets Kentucky citizens with online advertisements, Chappie has failed to identify the kind of substantial activity that would subject Elite to this Court's general, rather than specific, jurisdiction.  Likewise, the mere fact that Elite does business with Kentucky residents does not give rise to general jurisdiction.  *Id.* (citing *Masters, Inc. v. Augusta Natl. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).  And although Chappie alleges that Kentucky residents like himself were induced to cross into Indiana and patronize Elite, he makes no allegations describing the magnitude of business Elite conducts in Kentucky. Chappie alleges that Elite "do[es] business in the Commonwealth of Kentucky," but offers no detail aside from the Internet-based advertisements.  (Doc. # 1-1 ¶ 3).

But the Supreme Court has held that where a corporation—and, by extension, a limited liability company—is not organized in the forum state and does have its principal place of business there, general jurisdiction is rarely appropriate.  *BNSF Ry. Co. v. Tyrrell*,

581 U.S. 402, 413 (6th Cir. 2017).   Only in the "exceptional case" where a corporate defendant's operations in another forum are "so substantial and of such a nature as to render the corporation at home in that State" does general jurisdiction arise.   *Daimler*, 571 U.S., at 139 n. 19.   An evaluation of these operations "requires an appraisal of the corporation's activities in their entirety."   *Gilbert v. CSX Transportation, Inc.*, No. 6:25-cv-12-KKC, 2025 WL 1934168, at *2 (E.D. Ky. Jul. 14, 2025) (citing *Tyrrell*, 581 U.S. at 414). The Complaint is devoid of allegations that would permit the Court to conclude that Elite's operations in Kentucky are so substantial that it is essentially at home.   Other courts in this Circuit, and the Supreme Court, have declined to exercise general jurisdiction over defendants with a much more expansive presence in the forum state than Elite's alleged connections with Kentucky.   *See Tyrell*, 581 U.S. at 414. (finding that defendant was not subject to general jurisdiction even though it operated over 2,000 miles of railroad track in Montana and employed over 2,000 Montanans); *Gilbert*, 2025 WL 1934168, at 2 (holding that defendant was not subject to general jurisdiction despite operating over 2,000 miles of railroad in Kentucky and employing more than 1,000 Kentuckians); *Schmitt v. Bank of America*, No. 1:24-cv-611, 2024 WL 4902416, at *5 (W.D. Mich. Nov. 26, 2024) (holding that defendant was not subject to general jurisdiction despite operating multiple physical locations, making local investments, and providing online banking services in the forum state).   These cases undercut Chappie's argument that Elite's Internet activity and business relationships with Kentuckians are sufficiently extensive to render Elite "at home" in Kentucky.   As a result, the Court declines to exercise general jurisdiction over Elite.

### b.   Specific Jurisdiction

However, general jurisdiction is just one of two forms of personal jurisdiction. Even though Elite is not subject to this Court's general jurisdiction, it may be subject to this Court's specific jurisdiction. Specific jurisdiction flows from the "affiliation between the forum and the underlying controversy[.]" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). In the Sixth Circuit, courts apply a three-part test to ascertain whether the exercise of specific jurisdiction would comport with the requirements of due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods.*, 503 F.3d at 550 (quoting *S. Mach. Co v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). The first of these prongs—purposeful availment—is the "sine qua non for in personam jurisdiction" and thus, "arguably the most important" factor. *Id.* (quoting *S. Mach. Co.*, 401 F.2d 381-82).

### i.   *Purposeful Availment*

The first prong requires "something akin to a deliberate undertaking" and is satisfied "when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003) (quotations omitted) (emphasis in original). This entails "'some overt actions connecting the defendant with the forum state.'" *Id.* at

12

480 (quoting *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271 (6th Cir. 1998)).  When determining whether a defendant's internet activities rise to the level of purposeful availment, courts in the Sixth Circuit apply the test laid out in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).  *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002).  The *Zippo* test focuses on a website's interactive elements.  *Id.*  As a website's interactivity increases, so does the propriety of exercising personal jurisdiction.  *See Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015).  The mere "maintenance of [a] website, in and of itself, does not constitute the purposeful availment of the privilege of acting in" a forum state.  *Neogen*, 282 F.3d at 890.  However, a high "level of interactivity and commercial . . . exchange of information" on a website are indicative of purposeful availment.  *Zippo Mfg.*, 952 F. Supp. At 1124.  Social media pages do not track neatly onto the *Zippo* test.  *Binion*, 95 F. Supp. 3d at 1060.  This is because defendants do not own or operate the social media websites and social media pages are "not used primarily to conduct business."  *Id.* (citing *Hyperbaric Options, LLC v. Oxy-Health, LLC*, No. 12-cv-12020, 2013 WL 5449959, at *6 (E.D. Mich. Sept. 30, 2013)).  Thus, courts have found that "general internet communications or use of social media sites—including Facebook, Twitter, and YouTube—does not create a sufficient basis for personal jurisdiction."  *Brown v. Twentieth Century Fox Home Ent.*, No. 6:14-cv-147-KKC, 2015 WL 5081125, at *7 (E.D. Ky. Aug. 27, 2015) (citing *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006)).

However, advertising activities can rise to the level of purposeful availment in certain circumstances.  *Bridgeport Music, Inc.*, 327 F.3d at 472 (quoting *Creech v. Roberts*, 908 F.2d 75, 79 (6th Cir. 1990) (citation omitted)).  Still, only advertisements

13

"directly targeting or even actually reaching" the forum state can constitute purposeful availment. *Id.* And internet activities only satisfy the purposeful availment requirement where a defendant specifically targets forum-state consumers. *Brown*, 2015 WL 5081125, at *7; *see also Kent v. Hennelly*, 328 F. Supp. 3d 1055, 1059 (E.D. Tenn. 2018) (holding that, while the mere posting of advertisements online does not confer nationwide personal jurisdiction, purposeful availment may exist where "the nonresident defendant expressly targeted his intentional conduct at the forum state"). The Sixth Circuit has noted that where a defendant "holds itself out as welcoming" business from residents of the forum state, purposeful availment may exist. *Neogen*, 282 F.3d at 891 (finding that a defendant's representation that it would "do a genetic newborn screening test for any parent in any state" and inclusion of geographical data expressly including Michigan were indicia of purposeful availment). Whether or not such representations, standing alone, confer jurisdiction presents a "close question" that the Sixth Circuit has not answered. *Id.* Thus, a court must consider a defendant's internet activity in conjunction with its real-world conduct, including whether the defendant regularly welcomes business from forum-state customers to determine whether the purposeful availment prong is satisfied. *Id.*

Here, Chappie observes that, on its social media pages, Elite represents that it offers services in various Northern Kentucky cities, including Covington, Newport, Hebron, and Florence, and that Elite is "located in" Ohio, Indiana, and Kentucky. (Doc. # 6 at 3). Likewise, Elite's website advertises that Elite offers its services to Cincinnati, Ohio and the surrounding communities. (*Id.* at 2). And Chappie alleges that Elite used targeted advertising on Facebook to solicit business from Kentucky residents like himself. (*Id.*). Chappie argues that, by making these representations and using targeted

14

advertisements on social media, Elite deliberately sought to solicit the business of prospective patients in Kentucky—thereby purposefully availing itself of the privilege of acting in Kentucky.  (*Id.* at 5).  Elite, for its part, dismisses its social media representations as vestigial references to one of its clinics that was located in Hebron, Kentucky, prior to its closure in 2023.  (Doc. # 7 at 6).  At the time Chappie encountered an advertisement for its services, Elite maintains that it was "exclusively providing services and soliciting business outside of Kentucky."  (*Id.* at 3).  Although Elite acknowledges that it "at one time probably had significant contact with Kentucky," it argues that the closure of its Hebron location "eliminated that relationship."  (*Id.*).

Upon careful review, Chappie has alleged facts sufficient to state a *prima facie* case that Elite purposefully availed itself of the privilege of doing business in Kentucky. He has alleged that Elite "targeted advertisements of [its] medical treatment services" to Kentucky residents.  (Doc. # 1-1 at 2).  And Elite's Facebook and LinkedIn pages represented that it offered services to residents of Kentucky as recently as February of 2026.  (Doc. # 6 at 2-3).  Even if these representations allude to Elite's now-shuttered Hebron location, Elite chose to preserve them on its public-facing web pages.  Chappie argues that, by doing so, Elite continued to attract patients from Kentucky.  (Doc. # 6 at 5).  Although, as discussed above, the mere maintenance of a website or social media account does not provide a basis for personal jurisdiction, Elite's activity goes a step further.  *Brown*, 2015 WL 5081125, at *7.  Elite's LinkedIn page specifically invokes Kentucky alongside Ohio and Indiana as a location it services.  (Doc. # 6 at 5).  Further, Elite's Facebook page indicates that it serves four separate Northern Kentucky cities. (*Id.*).  Finally, Elite's website states that it provides services to Cincinnati and the

15

"surrounding communities."  (*Id.* at 2).  And Chappie alleges that Elite specifically targets Facebook advertisements to Kentucky users like himself.  (Doc. # 1-1 at 1-2).  As the Sixth Circuit reasoned in *Neogen*, such representations indicate purposeful availment. 282 F.3d at 891.  Additionally, Chappie has alleged that Elite, like the *Neogen* defendant, anticipated and engaged in regular business with Kentucky patients.  (*See* Doc. # 1-1 at 2; Doc. # 6 at 6).  In finding purposeful availment, the *Neogen* Court deemed it highly significant that "when potential customers from Michigan have contacted [the defendant] to purchase its services, NGS has welcomed their individual business on a regular basis." 282 F.3d at 891.  Indeed, Elite's interactions with Kentucky patients like Chappie are not fortuitous, one-off occurrences unlikely to reoccur.  As Elite acknowledges, its Lawrenceburg, Indiana location sits just twenty-five miles from Kenton County.  (Doc. # 7 at 2).  Other locations in Kentucky are even closer.  Construing these allegations in a light most favorable to Chappie—as the Court must—the Court concludes that Chappie has met his "relatively slight" burden and made a *prima facie* showing of purposeful availment. *Dean*, 134 F.3d at 1272.

### ii.   Arising From

Next, the Court must consider whether Chappie's cause of action arises out of Elite's activities in the forum state.  "The Sixth Circuit establishe[d] a 'lenient' threshold for meeting this requirement."  *Fortis Corp. Inc. v. Viken Ship Mgmt.*, 450 F.3d 214, 222 (6th Cir. 2006) (quoting *Bird*, 289 F.3d at 875).  Further, the Sixth Circuit has "articulated the standard for this prong in a number of different ways, such as whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts[.]"  *Air Prods.*, 503 F.3d at 553 (quoting *Lanier v. American Bd. of Endodontics*, 843 F.2d 901,

16

909 (6th Cir. 1988)).  In other cases, the Sixth Circuit has asked whether a plaintiff's cause of action is "'related to' or 'connected with' the defendant's contacts with the forum state.'" *Id.* (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (quotation omitted)).

Here, Elite argues that "there were no activities within Kentucky that gave rise to Plaintiff's cause of action" because "[t]he procedures and alleged injuries of Mr. Chappie all occurred in Indiana." (Doc. # 4-1 at 10).  However, as discussed above, Chappie has alleged that Elite intentionally targeted Kentucky residents like himself with advertisements for medical services.  (Doc. # 1-1 at 2).  One such targeted Facebook advertisement spurred Chappie to book an appointment with Elite and, ultimately, pay approximately $7,700 for the advertised neuropathy treatment.  (*Id.*).  Chappie alleges that, during the course of this treatment, Elite breached its duty of care and caused him to suffer a physical injury.  (*Id.* at 5).  Thus, Chappie alleges that Elite's contacts with Kentucky (its targeted advertisements aimed at prospective patients) directly caused the injury giving rise to Chappie's claim.  (Doc. # 6 at 6).  Such allegations satisfy the "lenient" standard established by the Sixth Circuit.  *Bird*, 289 F.3d at 875.

### iii.    *Reasonableness*

Finally, the Court must determine whether "the acts of the defendant or consequences caused by the defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Mohasco*, 401 F.2d at 381.  Where a defendant has purposefully availed itself of the privilege of acting in the forum state and the plaintiff's cause of action arises from the defendant's contacts with that forum, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria."  *Theunissen*, 935 F.2d at 1461 (quoting

17

*Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)).  In evaluating the reasonableness of exercising personal jurisdiction, the Court considers several factors, including (1) the burden on Elite; (2) Kentucky's interest in the litigation; (3) Chappie's interest in obtaining relief; and (4) other states' interest in securing efficient resolution of the controversy.  *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

The exercise of personal jurisdiction would not impose a substantial burden on Elite.  Although Elite is an Indiana company, its principal place of business is located in Dearborn County, which abuts Kentucky.  (Doc. # 1-1 at 1).  In addition to this proximity, Chappie has alleged that Elite regularly and intentionally advertises its services in Kentucky and routinely engages in business with Kentucky patients.  (Doc. # 1-1 at 1-2); *see also Younger Bros. Investments, LLC v. Active Enterp., Inc.*, No. 5:17-cv-317-JMH, 2018 WL 1659913, at *5 (E.D. Ky. Apr. 5, 2018) (finding that personal jurisdiction was reasonable where a foreign defendant had made representations in Kentucky as part of a business transaction).  Elite's burden to defend itself in Kentucky, then, "is not so great so as to be unreasonable."  *Childress Cattle, LLC v. Cain*, No. 3:17-cv-388-JHM, 2017 WL 3446182, at *6 (W.D. Ky. Aug. 10, 2017) (finding that an Indiana defendant did not face an unreasonable burden in litigating a plaintiff's claims in a Kentucky district court approximately 120 miles away).

Furthermore, Kentucky has a significant interest in providing a forum for its citizens to seek redress from medical providers who, because of their alleged negligence, injure Kentuckians after advertising their services in Kentucky.  Similarly, Chappie, as a Kentucky resident, has a strong interest in obtaining relief.  *Johnson v. Diamond Shine, Inc.*, 890 F. Supp. 2d 763, 771 (W.D. Ky. 2012) (finding that the plaintiff had "a substantial

interest in obtaining relief and clearly 'Kentucky has a legitimate interest in seeing that its citizens receive compensation for their injuries, especially when . . . the brunt of the injury may be felt in Kentucky . . . .'") (quoting *Auto Channel, Inc. v. Speedvision Network, L.L.C.*, 995 F. Supp. 761, 766 (W.D. Ky. 1997)).  Although Indiana also maintains an appreciable interest in providing a forum for medical malpractice actions such as this, its interest does not outweigh the foregoing considerations.  Accordingly, the Court concludes that the exercise of personal jurisdiction over Elite under these circumstances is reasonable and would not offend traditional notions of fair play and substantial justice.  *Int'l Shoe Co.*, 326 U.S. at 316 (quotation omitted).  As a result, Elite's Motion to Dismiss (Doc. # 4) pursuant to Rule 12(b)(2) is **denied**.

### B.    Failure to State a Claim

Having concluded that Chappie has made a *prima facie* showing that specific personal jurisdiction is appropriate, the Court turns to Elite's motion to dismiss the Complaint pursuant to Rule 12(b)(6).  (Doc. # 4-1 at 10).  Elite's argument is threefold. First, Elite argues that because this Court sits in diversity, Kentucky's choice-of-law rules apply.  (Doc. # 4-1 at 11).  Second, Elite asserts that Kentucky's choice-of-law rules require the application of Indiana substantive law to Chappie's medical malpractice claim. (*Id.*).  Finally, Elite claims that Chappie failed to comply with the dictates of I.C. § 34-18-8-4, which "requires that all medical malpractice claims be presented before a medical review panel before they can be litigated in a trial court."  (*Id.* at 12).  Elite argues that this failure requires dismissal.  (*Id.* at 13).

Elite correctly states that Kentucky's choice-of-law rules apply.  (Doc. # 4-1 at 11). "It is a long-recognized principle that federal courts sitting in diversity 'apply state

substantive law and federal procedural law.'"  *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (Stevens, J., concurring in part and concurring in the judgment) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)) (footnote omitted).  Because choice-of-law rules are substantive, this Court must apply Kentucky's choice-of-law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.") (footnote omitted); *see also Hall v. Rag-O-Rama, LLC*, No. 2:18-cv-12-DLB-CJS, 2020 WL 2134121, at *5 (E.D. Ky. May 5, 2020) (applying Kentucky's choice-of-law rules).  Chappie does not dispute this application.  The Parties diverge, however, in their appraisal of its effect.

Under Kentucky's choice-of-law rules "there is a strong preference . . . for applying Kentucky law."  *Wells Fargo Fin. Leasing, Inc. v.* Griffin, 970 F. Supp. 2d 700, 707 (W.D. Ky. 2013) (collecting cases).  "In other words, Kentucky is 'very egocentric or protective concerning choice of law questions.'"  *Warndorf v. Otis Elevators Co.*, No. 2:17-cv-159-DLB-CJS, 2019 WL 137585, at *2 (E.D. Ky. Jan. 8, 2019) (quoting *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. Ct. App. 1987), *overruled on other grounds by Oliver v. Schultz*, 885 S.W.2d 699 (Ky. 1994)).  As a result, "the law of the forum . . . should not be displaced without valid reasons."  *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972).  Kentucky's choice-of-law rules differ for cases that sound in tort versus those that sound in contract.  *Wells Fargo*, 970 F. Supp. 2d at 707 (citing *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009)).  Where choice-of-law issues emerge in contract disputes, Kentucky applies the *Restatement (Second) of Conflict of Laws'* "most significant contacts" test.  *Saleba*, 300 S.W.3d at 181 (citing *Foster*, 484 S.W.2d at 829 ).

However, in tort cases, Kentucky law will apply if there are any "significant contacts—not necessarily the most significant—with Kentucky."[3] *Foster*, 484 S.W.2d at 829. Medical malpractice claims "most assuredly" sound in tort. *Saleba*, 300 S.W.3d at 181. Thus, Kentucky law will apply to Chappie's claim if it bears "*any* significant contacts with Kentucky." *Warndorf*, 2019 WL 137585, at *2 (citations omitted).

Elite argues that, aside from Chappie's "browsing of Facebook and the internet, and the fact that he of course lives here, there are no other Kentucky connections in this case, much less any 'significant' ones." (Doc. # 4-1 at 12). Thus, Elite concludes that Indiana law should apply. In support of this reasoning, Elite cites *Stewart v. Kentuckiana Med. Ctr., LLC*. (*Id.* (citing 604 S.W.3d 264 (Ky. Ct. App. 2019)). In *Stewart*, an Indiana resident sought treatment at the emergency department of a hospital in Clarksville, Indiana. 604 S.W.3d at 267. After consulting with two separate cardiologists, the *Stewart* plaintiff underwent surgery to implant a pacemaker. *Id.* In the weeks following the surgery—which took place at the Indiana hospital—the plaintiff attended several follow-up appointments at her cardiologists' offices in Louisville, Kentucky. *Id.* Ultimately, after

---

[3]    The Kentucky Supreme Court's decision in *Kirilenko v. Kirilenko* muddied the waters of Kentucky's choice-of-law rules governing tort claims. 505 S.W.3d 766, 769 (Ky. 2016). In that case, which concerned an issue of family law, the Kentucky Supreme Court stated that "Kentucky follows the 'most significant relationship' approach in tort and contract cases." 505 S.W.3d at 769 (citing *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 566-67 (Ky. 2012) and *Saleba*, 300 S.W.3d at 182 n. 2). Another court in this District has observed that the appropriate test is somewhat unclear, especially because "*Kirilenko* was a divorce case that did not involve a tort claim" and the *Kirilenko* Court supported its assertion "by citing to a *Saleba* footnote that explicitly endorses the 'any significant contact' test[.]" *Cutter v. Ethicon, Inc.*, No. 5:19-cv-443-DCR, 2020 WL 109809, at *4 n.4 (E.D. Ky. Jan. 9, 2020) (citing *Saleba*, 300 S.W.3d at 182 n.2). Despite this confusion, courts applying Kentucky's choice-of-law rules to tort claims have continued to apply the longstanding rule that the "any significant contacts" test applies to tort actions. *See, e.g.*, *Hall*, 2020 WL 2134121, at *5; *Warndorf*, 2019 WL 137585, at *2; *Harris v. 3M Co.*, No. 6:25-cv-234-REW-CJS, 2026 WL 753931, at *6 n. 4 (E.D. Ky. Mar. 17, 2026). Additionally, neither Elite nor Chappie argue that the "most significant contacts" test should apply here. Thus, the Court will apply Kentucky's traditional "any significant contacts" test to Chappie's medical malpractice claim.

consulting with a third cardiologist, the *Stewart* plaintiff filed a medical malpractice suit against her former cardiologists and the Indiana hospital in Jefferson Circuit Court. *Id.* The *Stewart* Court, applying Kentucky's choice-of-law rules, held that Indiana law governed the plaintiff's medical malpractice claim. *Id.* at 269. This result flowed from the *Stewart* Court's conclusion that the plaintiff's claims lacked a significant contact with Kentucky. *Id.* Specifically, the *Stewart* Court emphasized the fact that the plaintiff was an Indiana resident who received treatment at an Indiana hospital. *Id.* The only alleged contacts with Kentucky were the plaintiff's follow-up visits in Louisville. *Id.* But, because the plaintiff did not "allege any independent negligence" arising from those incidental contacts, the *Stewart* Court determined that Indiana law should apply. *Id.*

Although the present case bears some similarities to *Stewart*, there is a crucial difference—Chappie is a Kentucky citizen who filed suit in a Kentucky court. (Doc. # 1-1 at 1). This Court has repeatedly held that Kentucky law governs tort claims brought in Kentucky when the plaintiff is a Kentucky resident. *See, e.g.*, *Hall*, 2020 WL 2134121, at *5 ("For the tort claims, Kentucky law applies because Hall is a resident of Kentucky and, therefore, the tort claims brought by Hall have a significant contact to Kentucky."); *Warndorf*, 2019 WL 137585, at *2 (applying Kentucky law to tort claims brought by a Kentucky plaintiff); *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Ga.*, No. 15-cv-161-DLB-HAI, 2017 WL 3122661, at *12 (E.D. Ky. July 21, 2017) ("The tort claims alleged here were committed against Kentucky residents, which gives the claims 'significant contacts' with Kentucky."). Kentucky's tort law is "intended to protect Kentucky residents and provide compensation when they are the *injured party*." *Custom Prods., Inc. v. Fluor Daniel Canada, Inc.*, 262 F. Supp. 2d 767, 771 (W.D. Ky. 2003) (emphasis in original).

Thus, where a Kentucky resident is injured in another state, Kentucky courts have not hesitated to find a significant contact and apply Kentucky law. *See, e.g., Shadd v. Daimler N.A. Corp.*, No. 2:19-cv-95-WOB-CJS, 2020 WL 3271010, at *2 (E.D. Ky. Jun. 17, 2020) (applying Kentucky law where a Kentucky plaintiff was injured in a traffic accident in Adams County, Ohio); *Hoagland v. Ford Motor Co.*, No. Civ. A. 06-615-C, 2007 WL 2789768, at *4 (W.D. Ky. Sept. 21, 2007) (applying Kentucky law where a Kentucky plaintiff was injured in a traffic accident in Indiana); *Warndorf*, 2019 WL 137585, at *2 (applying Kentucky law where a Kentucky plaintiff was injured in an elevator accident in Cincinnati, Ohio). Elite acknowledges "the fact that [Chappie] of course lives [in Kentucky.]" (Doc. # 4-1 at 12). And although Elite does not regard this as a "significant contact" with the Commonwealth, Kentucky courts do. Because Chappie is a resident of Kentucky, the tort claims he brings against Elite have a significant contact with Kentucky and, as a result, Kentucky law will apply.

Elite makes no argument that, applying Kentucky's substantive law, Chappie has failed to state a plausible claim of medical malpractice. (*See* Doc. # 4-1 at 12-13). Instead, Elite argues that, under Indiana law, Chappie's failure to comply with I.C. § 34-18-8-4's pre-suit medical review panel procedure requires dismissal without prejudice. (*Id.* at 12). However, as discussed above, Kentucky law applies to Chappie's medical malpractice claim. Because Elite does not argue that Chappie has failed to state a claim under Kentucky law, the Court **denies** its Motion (Doc. # 4) insofar as it seeks dismissal of Chappie's claim pursuant to Rule 12(b)(6).

## IV.    CONCLUSION

Because the Court concludes that Elite is subject to this Court's specific personal jurisdiction, and because Kentucky's substantive law applies to Chappie's medical malpractice claim, **IT IS ORDERED** that Elite's Motion to Dismiss (Doc. # 4) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant shall file its Answer to the Complaint **within twenty (20) days of the entry of this Order**.

This 4th day of May, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2025\25-235 MOO re MTD.docx

24